Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. In June 1992 plaintiff was employed by defendant-employer as a cigarette stocker. Her job involved lifting cases containing thirty (30) cartons of cigarettes and placing them in bays. The bays were stacked three (3) high and she used a cart with wheels and a ladder to reach the uppermost bay.
2. On June 29, 1992 plaintiff sustained a compensable injury by accident when she hurt her upper back while lifting a case of cigarettes. After reporting the injury, she was taken to the emergency room where she complained of burning and tingling in the thoracic spine area. The emergency room doctor prescribed medication and advised use of heat for muscular back pain. Her employer then sent her to a chiropractor, Dr. Davis, for further treatment. The upper back problems improved but she developed low back pain, so Dr. Davis referred her to Dr. Campbell, an orthopedic surgeon, who examined her on July 7, 1992. HE found no evidence of radiculopathy and diagnosed her condition as a lumbar strain from either the injury or the chiropractic manipulation. He prescribed non-narcotic medication and physical therapy.
3. Plaintiff was unhappy with Dr. Campbell, apparently because he would not give her narcotic pain medication, and she arranged to see Dr. Winfield. He prescribed Vicodin, a narcotic medication, as well as physical therapy. HE also ordered an MRI because of her persistent complaints. The MRI was normal and he concluded that she just had a soft tissue injury. However, for some unknown reason, plaintiff became convinced that he told her that she had a torn disk. In any event, Dr. Winfield stopped treating her on July 28, 1992 because defendants had only authorized him to give a second opinion and not to treat her.
4. Plaintiff returned to Dr. Campbell on August 4, 1992 and he continued to recommend conservative treatment. On September 8, 1992 he released her to return to work at light duty on a part-time basis. She was to work four (4) hours a day for two (2) weeks and then six (6) hours a day for two (2) weeks. Her employer gave her a job dusting racks. She was instructed to follow the doctor's orders and to take it easy. On September 10, 1992 she returned to work in that capacity. During the time she performed the light duty work, she did not complain of any problems with the job to her co-workers or her employer. However, she indicated that her father was ill and expressed a desire to take a leave of absence when talking to a co-employee. On September 14, 1992 she informed her supervisor and the insurance clerk that she was quitting so she could tend to her father, and she never returned. She did not request a leave of absence.
5. Up until this point, plaintiff had demonstrated a pattern of manipulation regarding her medical treatment. She did not tell Dr. Winfield of Dr. Campbell's treatment and did not tell Dr. Campbell of Dr. Winfield's treatment until she had to explain that she had already had an MRI. She had had a long history of psychological problems, had been treated for a number of years for depression, anxiety, agoraphobia and panic attacks, and had been hospitalized twice. There were a number of problems related to her earlier marriage, her boyfriend and her family, including the illness of her father, but she was also known to use illegal drugs and to manipulate medical care providers in order to obtain controlled medications. Her underlying personality disorder was a complicating factor in her recovery from the injury.
6. Plaintiff continued to receive physical therapy for her back problem but she was referred to Timothy Webster, Ph.D., a psychologist, for evaluation of apparent psychological problems, and he began seeing her on September 30, 1992. At that time she was having panic attacks and she appeared agitated and depressed. Dr. Webster found her to be marginally functional. He recommended counseling to try to alleviate her condition to the point that she would not have to be hospitalized, and defendants authorized him to see her for several sessions. By October 7 she had signs of impaired judgement, and on October 8 he determined that she would require hospitalization, so he referred her for admission. Dr. Schmitt, the psychiatrist who had previously treated her, attended her during her hospital admission from October 8 through 17, 1992. She received some follow-up care regarding medications at the Piedmont Treatment Center but apparently saw Anne Peele at Family Guidance for counseling.
7. Dr. Campbell examined plaintiff on November 5 and December 2, 1992 regarding her back condition, He continued to recommend that she work as long as she avoided repeated bending at the waist and lifting of over twenty-five (25) and later forty (40) pounds. She was released from his care on December 2 with no permanent partial disability.
8. In the spring of 1993, plaintiff saw Dr. Rosenfeld for another opinion regarding her condition, and on July 7, 1993 she was evaluated by Dr. Branch. No surgical lesion was identified, and she did not receive further treatment for her back problems.
9. Defendants admitted liability for benefits under the Workers' Compensation Act for plaintiff's June 29, 1992 injury by accident and paid compensation to her through September 9, 1992. The Form 21 only provided for an injury to the upper back, but her low back condition was a proximate result of the incident and compensation was properly paid. However, it was paid based upon an incorrect average weekly wage. Her average weekly wage was actually $339.35 which would generate a lower compensation rate than she received. The Form 21 agreement was entered into subject to wage transcript, and a Form 22 was submitted into evidence.
10. Effective September 10, 1992 defendant-employer offered work to plaintiff which was suitable to her capacity. She was only able to earn $181.00 per week for the first two (2) weeks and would have been able to earn $271.50 per week for the next two (2) weeks except that she became totally disabled on September 30, 1992 as a result of psychological problems. Although there were significant stresses unrelated to the injury that played a role in her condition, her pre-existing psychological condition was materially aggravated by this injury so that she required hospitalization. She remained unable to work in any capacity through October 17, 1992 when she was discharged. There was no evidence of disability related to her psychological condition after that date. With respect to her back condition, she was able to perform light work and, by quitting her employment, had refused suitable work offered by defendant-employer without reasonable excuse.
11. Plaintiff reached maximum medical improvement with respect to her back injury by December 2, 1992 and sustained no permanent partial disability. She was able to perform full-time work nor requiring repeated bending at the waist or lifting over forty (40) pounds. Although defendant-employer had offered her suitable work and was willing to work with her should she have had any problems performing the job, she voluntarily quit her employment there. Her allegation that she remained unable to work in any capacity was not supported by medical evidence and furthermore was not credible.
12. No finding is made regarding whether treatment for plaintiff's psychological problems following her hospitalization was causally related to this injury in that the evidence did not address that issue.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation for temporary partial disability at the rate of $105.57 per week for two (2) weeks, for the period from September 10 through 23, 1994, and in the amount of $38.77 for the 6-day period from September 24 through 29, 1992. N.C. Gen. Stat. § 97-30; N.C. Gen. Stat. § 97-32.
2. Plaintiff is entitled to compensation at the rate of $226.24 per week for two and four sevenths (2 4/7) weeks for the additional temporary total disability she sustained as a result of this injury by accident. However, defendants are entitled to a credit in the amount of their overpayment of compensation for the period ending September 9, 1992. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-42.
3. Having refused suitable work offered by defendants without justification and not sustained any permanent partial disability, plaintiff is not entitled to further compensation. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-31; and N.C. Gen. Stat. § 97-32.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, including medical treatment for her psychological condition to the extent that it was materially aggravated by the injury. G.S. § 97-2(19); G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay compensation to plaintiff for temporary partial disability at the rate of $105.57 per week for two (2) weeks for the period from September 10 through 23, 1994, and in the amount of $38.77, for the 6-day period from September 24 through 29, 1992. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $226.24 per week for two and four sevenths (2 4/7) weeks for her additional temporary total disability, but subject to a credit in favor of defendants for the overpayment of compensation. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from treatment for her psychological condition to the extent it was materially aggravated by the injury, when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
4. An attorney's fee in the amount of twenty-five (25) percent of the compensation awarded is approved for plaintiff's counsel, which fee shall be deducted from the compensation and paid directly to Mr. Sigmon.
5. Defendants shall pay the costs.
 S/ ______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________ JAMES J. BOOKER COMMISSIONER
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
CMV/CNP/tmd 12/20/94